

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

**ENTERED**
**08/08/2014**

| | | |
|---|---|---|
| IN RE: § | | |
| HUMBERTO SAENZ, JR; fdba PIZZA § | CASE NO: 13-70423 | |
| PATRON INC; fdba ESTRELLA § | | |
| VENTURES, INC. DBA PIZZA PATRON; § | | |
| aka SAENZ; fdba ARMAR ENTERPRISES § | | |
| INC, DELMA JEAN SAENZ § | | |
|     Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| INTERNATIONAL BANK OF § | | |
| COMMERCE § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 13-07028 | |
| § | | |
| HUMBERTO SAENZ, JR, *et al* § | | |
|     Defendant(s) § | | |

## MEMORANDUM OPINION

On March 7, 2014, Humberto Saenz, Jr. filed a motion to dismiss International Bank of Commerce's ("IBC") Complaint for Determination of Non-Dischargeable Debt. (Case No. 13-7028, ECF No. 1). IBC fails to state a direct fraud claim for an exception to discharge under § 523(a)(2). IBC also fails to state a derivative fraud claim under § 523(a)(2).

IBC may be given an opportunity to replead its derivative fraud claim under § 523(a)(2). If Gomez attempts to replead his § 523(a)(2) claim, then IBC will be granted leave to amend its equitable subrogation claim under § 523(a)(2). IBC's claims for direct fraud and indemnification under § 523(a)(2) are dismissed. Accordingly, the motion is granted in part and denied in part.

### Procedural Background

In December of 2012, Jose Gomez and JMG JMG Ventures, LLC ("Gomez") filed an amended petition in their state court lawsuit against Saenz, Pizza Patron Inc. ("PPI"), Lone Star

National Bank and International Bank of Commerce ("IBC"). The lawsuit arises from a business transaction between Gomez and Saenz. On November 26, 2013, IBC filed a Complaint for Determination of Non-dischargeable Debt under 11 U.S.C. § 523(a)(2)(A). (ECF No. 1). Gomez's amended state court lawsuit is attached as an Exhibit to the Complaint.

On March 7, 2014, Saenz filed a motion to dismiss IBC's complaint. (ECF No. 19). On March 28, 2014, IBC filed (i) its First Amended Complaint and (ii) a response to Saenz's motion to dismiss. (ECF No. 21; ECF No. 22). On April 2, 2014, Saenz filed (i) a reply to IBC's response and (ii) a motion to strike IBC's First Amended Complaint. (ECF No. 23). On June 20, 2014, IBC filed a response to Saenz's motion to strike. (ECF No. 24). On June 24, 2014, Saenz filed a reply to IBC's response. (ECF No. 25). Finally, on July 15, 2014, IBC filed a reply to Saenz's reply. (ECF No. 26).

## Background Facts

On October 15, 2009, Gomez signed a Purchase-Sale Agreement for the purchase of Saenz's equipment and inventory, and for the Pizza Patron franchise in Rio Grande City. On February 8, 2010, Gomez obtained a $287,200.00 loan from Lone Star Bank in connection with the purchase. Gomez contends that Saenz and IBC Bank created false profit and loss reports for the franchise and presented them to Gomez prior to the sale in order to induce him to buy the franchise and help him secure financing with Lone Star Bank. Specifically, Gomez claims that IBC's loan officer, Elizabeth Goana, "created Good Will Value along with the Profit and Loss documents that were provided to Plaintiffs in order to induce the Plaintiffs to purchase the franchise and thereby pay off the balance of the loan of the business." (ECF No. 1-1 at 10).

In IBC's Original Complaint, it admits that it created Profit and Loss reports for the Pizza Patron franchise, but alleges that it relied on numbers provided to them by Saenz. (ECF No. 1 at

3). In its Amended Complaint, IBC alleges that it simply provided Saenz with blank financial statement forms. (ECF No. 21 at 4). IBC further alleges that "Saenz represented to IBC that he needed a finance statement and IBC may have provided him a blank one. Saenz then presented a filled out Finance Statement which he alleged was filled out by IBC. IBC was injured as a result of this misrepresentation by Saenz to Gomez and IBC." (ECF No. 21 at 4).

IBC requests a declaration that (i) "the Saenz Defendants, jointly and severally, are liable to IBC for any liability assessed against IBC in favor of the Gomez Plaintiffs" and (ii) that the Court declare "that the judgment debt awarded to IBC as to Saenz, including attorneys['] fees and costs, is non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code." (ECF No 1 at 6).

## Rule 12(b)(6) Standard

Saenz's motion to dismiss for failure to state a claim for which relief can be granted is filed under Fed. R. Bankr. P. 7012, which incorporates Fed R. Civ. P. 12(b)(6). The Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679

(2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

**Rule 9**

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. Fed. R. Civ. P. 9(b). *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

### Saenz's Motion to Strike

On April 2, 2014, Saenz filed a motion to strike IBC's First Amended Complaint arguing that (i) the amended complaint was filed after the deadline for complaints to determine the

dischargeability of debt and (ii) IBC's amendment is futile on the basis of judicial estoppel. (ECF No. 23).

The Bankruptcy Rule that establishes the deadline for seeking an exception to a debtor's discharge (i.e., Federal Rule of Bankruptcy Procedure 4007(c)) operates in conjunction with Bankruptcy Rule 7015, which incorporates Federal Rule 15. *In re Huggard*, 510 B.R. 668 (Bankr. D. Mass. 2014). Bankruptcy Rule 7015 states that Federal Rule 15 applies in adversary proceedings. *Id*. Under Federal Rule 15(a), leave of court is required to amend a pleading when the amendment is sought beyond 21 days after the filing of a responsive pleading or 21 days after service of a motion under Rule 12(b). *Id*. The record shows that IBC filed its First Amended Complaint (March 28, 2014) exactly 21 days after Saenz filed his motion to dismiss (March 7, 2014). Accordingly, IBC was not required to seek leave of court to file its amended complaint.

However, Rule 15(a)'s "matter of course" right to amend does not exempt a creditor from complying with Rule 4007(c)'s deadline. *See In re Brown*, 2013 WL 3353829 (Bankr. N.D. Okla. July 3, 2013) (holding that creditor's Rule 15(a) "matter of course" right to amend is "relevant only to the issue of whether [creditor] had to request leave of court before filing the Amended Complaint, and has no bearing on whether the claims asserted in the amended pleading are time-barred.").

Rule 4007(c) requires that complaints to determine exceptions to discharge must be filed no later than 60 days after the first date set for the § 341 creditors' meeting. Fed. R. Bankr. P. 4007(c). In this case, the first date set for the § 341 creditors' meeting was September 27, 2013. Accordingly, the deadline to file a complaint seeking an exception to discharge was November 26, 2013.

Courts generally adhere to the strict deadlines for filing discharge complaints. However, some courts, including courts in the Fifth Circuit, have allowed a party to amend his complaint from one § 523(a) subsection to another under § 523(a) subsection when the actions involved in both arise out of the same events. When allowed, the new § 523(a) claim must relate back to the date of the original § 523(a) claim. *See In re Fondren,* 119 B.R. 101, 104 (Bankr. S. D. Miss. 1990) ("Under the facts of this case, the allegations upon which the proposed amendment under section 523(a)(6) are based are the very same as those presented in the original complaint which alleged a violation under section 523(a)(2). Therefore, under Rule 15(c) ... the requested amendment here is allowable and will relate back to the date of the original complaint."). IBC can file an Amended Complaint so long as it establishes relation back under Rule 15(c).

An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence attempted to be set out in the original proceeding. Fed. R. Civ. P. 15(c)(1)(B). In this case, IBC is not seeking to add any new § 523(a) claims or to change any of its legal theories. IBC's Original Complaint and Amended Complaint both assert claims under § 523(a)(2), § (a)(4), and § (a)(6).[1]

In its Amended Complaint, IBC corrects a material fact. IBC initially asserted that it *created* the Pizza Patron profit and loss reports at Saenz's request. In its Amended Complaint, IBC alleges that it merely provided Saenz with blank financial statement forms for him to fill out on his own. The exceptions to discharge sought by IBC are based upon the same transaction and

---

[1] The Original Complaint and Amended Complaint focus on IBC's § 523(a)(2)(A) claim and are entitled "Determination of Non-Dischargeable Debt under 11 U.S.C. § 523(a)(2)(A). However, both the Original Complaint and Amended Complaint additionally request a determination of non-dischargeablity under § 523(a)(4) and § 523(a)(6) without providing any explanation.

events outlined in the Original Complaint. Accordingly, the Amended Complaint relates back to the Original Complaint.

The Court rejects Saenz's argument that IBC waived its relation back argument by failing to address it in the Amended Complaint. IBC sufficiently established relation back in its reply brief filed on July 15, 2014. (ECF No. 26).

The Court also rejects Saenz's argument that IBC's amendment is futile on the basis of judicial estoppel. In order to establish judicial estoppel, four elements must be present: (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently. *In re USinternetworking, Inc.*, 310 B.R. 274 (Bankr. D. Md. 2004). Saenz did not allege that a prior inconsistent position was adopted by a court (element 3) or that IBC acted intentionally (element 4). Accordingly, Saenz's judicial estoppel argument fails.

Saenz's motion to strike is denied.

## Analysis

**§ 523(a)(2)**

Section 523(a)(2) states:

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, removal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

>    (i) that is materially false;
>    (ii) respecting the debtor's or an insider's financial condition;
>    (iii) on which the creditor to whom the debt—or is liable for such money, property, services, or credit reasonably relied; and
>    (iv) that the debtor caused to be made or published with intent to deceive.

IBC seeks an exception to discharge under § 523(a)(2) based on two separate theories: (i) a direct fraud claim against Saenz; and (ii) an indemnification/subrogation claim for Saenz's fraud against Gomez. IBC has failed to sufficiently plead a claim under either of these theories.

### IBC's Direct Fraud Claim

For § 523(a)(2)(A) actions, the Fifth Circuit requires proof of common-law fraud. *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) ("The operative terms in § 523(a)(2)(A), ... 'false pretenses, a false representation, or actual fraud,' carry the acquired meaning of terms of art ... [and] are common-law terms."). For a debt to be non-dischargeable under § 523(a)(2)(A), the creditor must show that (i) the debtor made a representation; (ii) the debtor knew the representation was false; (iii) the representation was made with the intent to deceive the creditor; (iv) the creditor actually and justifiably relied on the representation; and (v) the creditor sustained an injury as a proximate result of its reliance. *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005).

In the Original Complaint, the extent of IBC's direct fraud claim against Saenz is that it "relied on Saenz Defendants in coming up with figures for the profits and loss reports and Good Will Value." (ECF No. 1 at 4). IBC fails to specify what representation Saenz made to IBC, much less plead that Saenz knowingly made a false representation to IBC that it justifiably relied on. Accordingly, IBC's original complaint failed to state a direct fraud claim against Saenz.

IBC's amended complaint also falls short. The Amended Complaint attempts to allege that—merely by requesting a blank financial statement—Saenz made a false representation to

IBC.  If IBC's new position proves factually correct (i.e., that it only provided a blank financial statement), it is impossible to understand how IBC relied on any statement by Saenz.  According to IBC, Saenz requested a blank form, and IBC gave him one.  The Amended Complaint fails to state a claim for fraud if all that Saenz did was to request a blank form.

### Indemnification/Subrogation under § 523(a)(2)

IBC also seeks an exception to discharge under § 523(a)(2) based on indemnification and subrogation theories for Saenz's fraud against Gomez.

Saenz alleges that indemnification and subrogation claims fall outside of the scope of the exception set forth in § 523(a)(2).  The Court rejects that argument.

Saenz relies on *In re Cox* to support his claim that the alleged fraud must be committed against the plaintiff in order to fall under section 523(a)(2).  In *In re Cox*, the court held that "Plaintiffs have failed to establish [that] they can maintain a § 523(a)(2) claim based on alleged misrepresentations made not to them but to a third party." *In re Cox*, 462 B.R. 746, 757 (Bankr. D. Idaho 2011).

In *In re Burton*, the court allowed a plaintiff to proceed with a §523(a)(2) claim even though the alleged fraud was against a third party and plaintiff's claim sounded in vicarious liability and indemnity.  *In re Burton*, 2009 WL 537163 (Bankr. E.D. Tenn. 2009).  In *In re Burton*, the court rejected the debtor's argument that "non-dischargeability under § 523(a)(2)(A) and (6) is limited to a debt held by the claimant who was the direct or immediate target of the debtor's fraudulent intent or malicious conduct." *Id.*

> Unlike the court in *Menna,* this court is not concerned by the fact that Aviva will be unable to establish that it relied upon any misrepresentations by Burton. As long as the evidence establishes that GreenBank relied on the misrepresentations, and that the other elements of fraud are present as between Burton and GreenBank, then Avia's non-dischargeability claim, premised on its vicarious liability, may proceed.

*Id.*

The Court agrees with *In re Burton*. Based on the Court's review of the relevant Supreme Court and Fifth Circuit case law, the Court finds that indemnification and subrogation claims for a debtor's fraud may fall within § 523(a)(2).

In *Winkler*, the Fifth Circuit held that there was no "receipt of benefit" requirement under § 523(a)(2). *In re M.M. Winkler & Associates*, 239 F.3d 746, 749 (5th Cir. 2001). The Fifth Circuit held that "if a debt arises from fraud and the debtor is liable for that debt under state partnership law, the debt is non-dischargeable under § 523(a)(2)(A)." *In re M.M. Winkler & Associates*, 239 F.3d 746, 751 (5th Cir. 2001). In that case, the Court held that an innocent partner could not discharge a debt for fraud committed by another partner at his firm. The Court reasoned that even if the innocent partner had not personally benefited, a person with whom the partner was associated had "obtained" a benefit from the fraud. "The statute focuses on the character of the debt, not the culpability of the debtor or whether the debtor benefitted from the fraud… Thus, the plain meaning of the statute is that debtors cannot discharge *any debts that arise from fraud* so long as they are liable to the creditor for the fraud." *In re M.M. Winkler & Associates*, 239 F.3d 746, 749 (5th Cir. 2001).

In *Winkler*, the Fifth Circuit relied on the Supreme Court decision in *Cohen v. de la Cruz*. *Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998). In *Cohen*, the Supreme Court held that "§ 523(a)(2)(A) prevents the discharge of *all liability arising from fraud*, and that an award of treble damages therefore falls within the scope of the exception." *Id.*

at 215.  The Supreme Court reasoned that "[o]nce it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge." *Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 1214, 140 L. Ed. 2d 341 (1998). The Supreme Court rejected the debtor's argument that a "debt for money, property, etc. is necessarily limited to the value of the "money, property, services, or… credit" the debtor obtained by fraud, such that a restitutionary ceiling would be imposed on the extent to which a debtor's liability for fraud is non-dischargeable." *Id*. at 213.  The Supreme Court explained that "[debtor's] argument is at odds with the meaning of "debt for" in parallel exceptions to [the] discharge set forth in § 523(a), which use "debt for" to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like." *Cohen v. de la Cruz*, 523 U.S. 213, 214, 118 S. Ct. 1212, 1214, 140 L. Ed. 2d 341 (1998).

In order to sustain a derivative fraud claim under § 523(a)(2), the movant must (i) plead a theory of recovery showing that movant's liability to the third party arises because of debtor's fraud and (ii) that all of the elements of fraud are present between the debtor and third party.

As currently pled, IBC cannot sustain its subrogation claim. The Texas Supreme Court summarizes the doctrine of equitable subrogation as follows:

> The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. Texas courts interpret this doctrine liberally. Although the doctrine most often arises in the insurance context, equitable subrogation applies in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.

*Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008) (internal citations omitted).

The facts in this case suggest that IBC may be held liable for Saenz's fraudulent conduct. However, IBC failed to sufficiently plead how or why it is entitled to equitable subrogation. IBC's pleadings in support of its subrogation claim is limited to just one sentence: "[t]o the extent that IBC is subrogated to the rights of the Gomez Plaintiffs for damages arising from Saenz's fraud or fraudulent representation may recover against the Saenz Defendants, the debt resulting from Saenz's conduct is and should be declared to be non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code." (ECF No. 1 at 5). IBC's request for subrogation, without any explanation, is insufficient to sustain an equitable subrogation claim under § 523(a)(2).

IBC also alludes to an indemnification theory of recovery: "[t]o the extent that IBC is determined to be directly liable to the Gomez Plaintiffs on any of the Gomez Plaintiff's claims, IBC is entitled to declaratory judgment against the Saenz Defendants, jointly and severally, in the amount of the Saenz Defendants' proportional liability on those claims and under any right of IBC to indemnification by the Saenz Defendants, whether that right arises out of contract or applicable law." (ECF No. 1 at 5).

IBC fails to articulate why it is entitled to indemnification. IBC does not allege that it has a contractual right to indemnification. Nor does it allege a right to equitable or common law indemnification. Unlike its equitable subrogation claim, the facts in this case do not suggest that IBC may be able to rely on common law indemnification. In *Whitfield*, the Texas Court of Appeals articulated the application of common law indemnity under Texas law:

> Common law indemnity, on the other hand, has been abolished in Texas **except in cases where the defendant's liability is purely vicarious**. Vicarious liability is liability placed upon one for the conduct of another, based solely upon the relationship between the two. Therefore, common law indemnity is recoverable by a defendant who, through no act of his own, has been made to pay for the

negligence of another defendant based solely upon the relationship between the two defendants.

*St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 177-78 (Tex. App. 1997).

Accordingly, IBC failed to state an indemnification claim under § 523(a)(2).

### Leave to Amend Equitable Subrogation Claim

Although deficiently plead, IBC's equitable subrogation theory may have some factual support. Accordingly, the Court will allow IBC to replead its equitable subrogation claim under § 523(a)(2) if Gomez attempts to replead his § 523(a)(2) claim.

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). A decision to grant leave is within the discretion of the Court, but Rule 15(a) "evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872 (5th Cir. 2000) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.,* 195 F.3d 765, 770 (5th Cir. 1999)). The Court does not have the discretion to deny leave to amend unless it has a substantial reason for doing so. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.),* 88 F.3d 311, 314 (5th Cir. 1996) (citations omitted). "In deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

The court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case,

unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

Federal Rule of Bankruptcy Procedure 4007(c) requires that complaints to determine exceptions to discharge be filed no later than 60 days after the first date set for the § 341 creditors' meeting. Fed. R. Bankr. P. 4007(c). In this case, the first date set for the § 341 creditors' meeting was September 27, 2013. Accordingly, the deadline to file a complaint seeking an exception to discharge was November 26, 2013.

Courts generally adhere to the strict deadlines for filing discharge complaints. However, some courts, including courts in the Fifth Circuit, have allowed a party to amend his complaint from one charge under § 523(a) to another under § 523(a) when the actions involved in both arise out of the same events. When allowed, the new § 523(a) claim relates back to the date of the original § 523(a) claim. *See In re Fondren,* 119 B.R. 101, 104 (Bankr. S. D. Miss. 1990) ("Under the facts of this case, the allegations upon which the proposed amendment under section 523(a)(6) are based are the very same as those presented in the original complaint which alleged a violation under section 523(a)(2). Therefore, under Rule 15(c) ... the requested amendment here is allowable and will relate back to the date of the original complaint."); *In re Heath,* 114 B.R. 310, 312 (Bankr. N. D. Ga. 1990) (a claim under § 523(a)(6) may relate back to an earlier complaint asserting a claim under § 523(a)(4) if it arises out of the same transaction or occurrence.); *In re Oxburn,* 203 B.R. 811, 813 (Bankr. S. D. Ga. 1996) (because the movant's § 523(a)(15) claim "arises out of the same transactions and set of facts giving rise to the timely filed § 523(a)(5) complaint, the amendment relates back to the date of original filing and is timely under Rule 4007(c).").

The Fifth Circuit has expressly acknowledged that courts allow amendments of § 523(a) claims filed after the Rule 4007(c) sixty-day period has expired to relate back to the original complaint. In *Bercier v. Bank of La,* the Fifth Circuit barred the plaintiff from asserting a particular amended claim under § 523(a), but stated, "[w]e do not suggest that an amended complaint adding a ground of challenge to the dischargeability of a particular debt would not relate back, for purposes of Bankruptcy Rule 4007(c), to the time of filing of the same creditor's original complaint challenging the dischargeability of the identical debt." *Bercier v. Bank of La.,* 934 F.2d 689, 693 n. 7 (5th Cir. 1991).

The Court granted Gomez leave to amend his § 523(a)(2) claim. If Gomez attempts to replead his fraud claim under § 523(a)(2), then IBC will have until August 29, 2014 to replead its equitable subrogation claim.

## Conclusion

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **August 8, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE